IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**HONESTECH, INC.,**
          **Plaintiff,**

-vs-                                                  Case No. A-08-CA-922-SS

**SONIC SOLUTIONS,**
          **Defendant.**

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, specifically Plaintiff Honestech Inc. ("Honestech")'s Motion to Strike the Proposed Testimony of Defendant Expert Dr. Samuel R. [sic] Isaacson [#42], and Defendant Sonic Solutions ("Sonic")'s response thereto and supporting evidence [#46], [#47], [#48]. Having considered the aforementioned documents, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

### Background

**I.    General Background**

This is an action for unfair competition, trademark infringement, trade dress infringement, injury to business reputation, tortious interference with business relations, and unjust enrichment under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and state law. Am. Compl. at ¶ 3. Honestech claims it developed an analog to digital ("A/D") conversion product in March of 2004, which allows consumers to easily capture media content from older analog formats and convert it to modern digital

formats. *Id.* at ¶ 9. Honestech claims it has marketed its product since September of 2005 under the name and mark "VHS TO DVD," with a distinctive packaging design showing a video tape above a disc along a green arrow design. *Id.* at ¶ 10. Honestech alleges since approximately 2008 Sonic, Honestech's direct competitor, has been marketing a new A/D conversion product under the name and mark "VHS TO DVD," using an identical mark and a confusingly similar packaging design, in order to intentionally interfere with Honestech's business. *Id.* at ¶¶ 25-28.

On November 2, 2009, Honestech filed a motion to exclude the proposed testimony of Sonic's expert witness, Dr. Bruce Isaacson. Pl.'s Mot. Exclude [#42]. Honestech does not challenge Dr. Isaacson's qualifications as an expert in the field, or the relevancy of his testimony. What Honestech does dispute is the scientific reliability of a survey (and the resulting opinions) conducted by Dr. Isaacson on the issue of whether "VHS to DVD" has achieved "secondary meaning." Honestech claims the survey is unreliable and should be excluded because Dr. Isaacson (1) did not survey the relevant universe of consumers; and (2) made several methodological errors. *Id.* at 1.

## Analysis

### I. Legal Standards for Admissibility of Expert Testimony

Federal Rule of Evidence 702 provides "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert witness may testify as to his or her opinion on the issue as long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The Supreme Court has held Rule 702 imposes a special obligation upon a trial judge to ensure that any and all expert testimony admitted at trial "is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

137, 147 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Thus, where the testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question, ...the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* at 149 (citing *Daubert*, 509 U.S. at 592).

In *Daubert*, the Supreme Court offered an illustrative, but not exhaustive, list of factors that district courts may use in evaluating the reliability of expert testimony. 509 U.S. at 593. These factors include whether the expert's theory or technique can be or has been tested; whether it has been subjected to peer review and publication; whether it has a known or potential rate of error or standards controlling its operation; and whether it is generally accepted in the relevant scientific community. *Id.* at 593-94.[1] The Supreme Court has emphasized the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). The district court's responsibility is simply "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (citing *Kumho Tire*, 526 U.S. at 152).

## II. Application to the Present Case

### a. Secondary Meaning

---

[1] The *Daubert* factors are not limited to opinions based on "hard science;" they may be used to evaluate expert testimony based on experience or training, as well. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (the Court's "basic gatekeeping obligation" under *Daubert* "applies to all expert testimony," not just scientific testimony). The

A descriptive mark is protectable only when it has acquired a secondary meaning in the minds of the consuming public. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 540 (5th Cir. 1998). To establish secondary meaning, "a plaintiff must show that the primary significance of the term in the mind of the consuming public is not the product but the producer." *Sec. Cen., Ltd. v. First Nat. Sec. Cents.*, 750 F.2d 1295, 1301 (5th Cir. 1985); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir.1983). The Fifth Circuit has held "the authorities are in agreement that survey evidence is the most direct and persuasive way of establishing secondary meaning." *Id.* (citing *Zatarains*, 698 F.2d at 795). This is true "because the chief inquiry is the attitude of the consumer toward the mark; does it denote to him a 'single thing coming from a single source'? Short of a survey, this is difficult of direct proof." *Id.* (internal quotations omitted).

### b. Relevant Universe

Sonic's expert witness, Dr. Isaacson, conducted a survey in which he attempted to measure the secondary meaning of "VHS TO DVD" among "respondents representative of consumers who might have a need for an A/D product." Pl.'s Mot. Exclude at Ex. A ("Isaacson Rep."), ¶ 15. After passing certain screening questions, 251 respondents were polled. *Id.* at ¶ 16. Among those that were aware of the term "VHS TO DVD" in relation to the product category, only 6% associated the term with the products of one company, while 16% associated the term with the products of more than one company, and 60% said they did not associate the term with any particular company or companies. *Id.* at ¶¶ 16-17.

Dr. Isaacson screened potential survey participants based on the following criteria:

1. They are at least 21 years old.

2. They buy or participate in selecting computers and/or audio and video equipment for

their household.

3. They own a computer less than four years old and at least one device capable of playing analog content, such as a VCR or videotape player, a camcorder, a turntable for playing vinyl records, or an audio cassette player.

4. They have audio or video material recorded in an analog format such as videotape, camcorder tape, vinyl records, and/or audio cassettes.

5. They and their household were not employed in occupations that would provide unusual knowledge, such as advertising or marketing research, or by companies that make or sell audio or video equipment or software.

6. Within the past 60 days, they have not completed more than one online survey related to audio/video electronics other than video games.

*Id.* at 5-6; Pl.'s Mot. Exclude at Ex. B, pp. 51-55.

Honestech claims the survey conducted by Dr. Isaacson is unreliable because he did not identify the proper "survey universe" of relevant consumers. Honestech correctly notes one of the most important factors in assessing the validity of an opinion poll is the adequacy of the "survey universe"; in other words, "the persons interviewed must adequately represent the opinions which are relevant to the litigation." *See Amstar Corp. v. Domino's Pizza Inc.*, 615 F.2d 252, 264 (5th Cir. 1980) (discussing a survey on likelihood of confusion). For a target universe to be appropriate, it must consist of individuals whose opinions are relevant to the present litigation. *Id.* Honestech complains Dr. Isaacson's universe was too broad to be reliable because he did not limit his survey to those consumers who had purchased A/D conversion software in the past or intended to purchase it in the future. Pl.'s Mot. Exclude at 5-6.

Sonic responds that requiring Dr. Isaacson to limit the survey to only those who purchased or intended to purchase A/D conversion products is impractical and incorrect, as it would bias the outcome of the survey. Def.'s Resp. at 3. Sonic claims Dr. Isaacson correctly identified as potential

purchasers those who (1) have analog media and (2) possess the equipment necessary to use an A/D conversion product, and screening for those who are past purchasers or who already plan to purchase the product would be improper.

The Court finds it should not exclude Dr. Isaacson's survey on the basis the survey universe is overbroad. Honestech cites a plethora of cases which it claims support its position. *See, e.g. Amstar Corp.*, 615 F.2d at 264 (finding an inappropriate universe in a confusion survey because the survey focused on the member of the family primarily responsible for the grocery shopping, and did not necessarily include the most likely consumers of defendant's product (pizza)); *Safeway Stores, Inc. v. Safeway Ins. Co.*, 657 F. Supp. 1307, 1317-18 (M.D. La. 1985) (finding an inappropriate universe in a confusion survey because those who have driver's licenses do not necessarily make decisions about car insurance); *Riviana Foods Inc. v. Societe Des Produits Nestle S.A.*, 1994 WL 761242 at ¶ 32 (S.D. Tex. 1994) (finding an inappropriate universe in a confusion survey because those who do most of the grocery shopping for their households and had tried to lose weight in the past year are not necessarily purchasers or potential purchasers of rice or diet meal replacement products). But the present case is easily distinguishable.

First, Dr. Isaacson was conducting a survey on "secondary meaning," not on the likelihood of confusion, which is the type of survey at issue in most of the cases cited by Honestech. Secondly, and importantly, the survey concerned a product likely to be purchased only once in a lifetime, not a product (like pizza, groceries, or car insurance) that is likely to be purchased repeatedly over a consumer's lifetime. In *Sno-Wizard Mfg., Inc. v. Eisemann Products Co.*, 791 F.2d 423 (5th Cir. 1986), the Fifth Circuit considered a secondary meaning survey on snowball machines, which is similar to A/D conversion products in that it is likely a one-time purchase. The interviewer limited

the survey universe to purchasers of snowball machines and those who admitted to having "influence" over the purchase of snowball machines. *Id.* at 427. The Fifth Circuit found the district court was correct in disregarding the survey, as surveying those who had already bought and used the product skewed the results, and was therefore unpersuasive evidence of secondary meaning. *Id.* The survey to a great extent could only be interpreted to mean "that operators of snowball machines can identify the type of machine they use each day." *Id.*

The same reasoning applies to the present case, as limiting the survey to those who have purchased an A/D conversion product would impermissibly skew its results. Furthermore, it would be almost impossible to locate a survey population of those who have a concrete intention to purchase an A/D conversion product, but have not already done so. Without a pattern of such purchases, it is difficult to predict future purchases. Therefore, the fact Dr. Isaacson screened for those who (1) have analog media and (2) possess the equipment necessary to use an A/D conversion product—in order to limit the universe to those who might be potential consumers—does not in itself render the survey unreliable. Any objections to his methodology in this matter go to weight of the survey evidence, not its admissibility.

c. **Remaining Arguments**

Honestech also claims a conglomeration of other errors were committed by Dr. Isaacson, which it argues cumulatively render his survey and opinions unreliable. The Court does not agree. The Court notes as a general rule, "methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004). In extreme cases, improperly conducted surveys with slanted questions or serious methodological deficiencies may make reliance on a survey unreasonable. *Id.* (citing *Bank*

*of Tex. v. Commerce Southwest, Inc.*, 741 F.2d 785, 789 (5th Cir.1984)). But a survey need not be perfectly conducted for the results to be admissible. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir.1993) ("While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, ... such situations will be rare[.]")

First, Honestech claims Dr. Isaacson failed to take into account the timing of his survey, which was performed eight months after two directly competing products with identical names coexisted in the marketplace; in other words, after Sonic launched its VHS to DVD product. It claims the timing of this research invalidates its usefulness, and the survey should have been done when the suit was filed. But it would hardly be realistic to expect a defendant to anticipate suit and proactively retain an expert to conduct a survey prior to its launching of a new product. This objection goes to the weight the survey's results should be afforded by the fact-finder, not its reliability.

Honestech also implies Dr. Isaacson's use of an internet survey panel raises validity concerns, as "professional Internet survey takers have learned how to game the system in order [sic] accumulate points and substantial safeguards are necessary to address this." Def.'s Mot. Exclude at 9-10. But Honestech does not elaborate, and Dr. Isaacson testified to significant safeguards he used to guard against this problem. For instance, he claims those who answered "Yes" to every answer in an attempt to qualify for the survey were excluded. He also claims he took steps to validate respondents' identities and confirm they were paying attention, including requiring them to enter their zip code at different points (and requiring those answers to match), requiring them to re-answer certain qualifying questions, etc. Isaacson Rep. at ¶ 26. He also claims there is no way the

respondents could have known the "right" answers to give in order to qualify. *See* Isaacson Depo. at 188-89.

Honestech also argues the survey is flawed because it lacks a control group, "which means there is no way to know the significance of any effect that might be found to differentiate the treatment phrase (VHS TO DVD) results from background noise." Def.'s Mot. Exclude at 10. But Honestech cites no authority indicating such a requirement exists, and the Court does not find Honestech's reasoning compelling. A secondary meaning survey is not intended to establish causation, but to measure the extent to which consumers associate a particular product name with a single source. Thus, such a survey does not require a control group as a matter of course. Honestech's vague objection on this ground is unpersuasive.

In conclusion, although Dr. Isaacson's survey results may well be rejected by the ultimate fact-finder—as Dr. Isaacson will no doubt be subject to rigorous cross-examination on this subject—the reasoning and methodology underlying it do not appear unsound. The motion to exclude is therefore DENIED.

### Conclusion

In accordance with the foregoing,

IT IS ORDERED that Plaintiff Honestech Inc.'s Motion to Strike the Proposed Testimony of Defendant Expert Dr. Samuel R. [sic] Isaacson [#42] is DENIED.

SIGNED this the 7th day of December 2009.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE