**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**HONESTECH, INC.,**

                    **Plaintiff,**

**-vs-**                                                    **Case No.  A-08-CA-922-SS**

**SONIC SOLUTIONS,**

                    **Defendant.**

_____

# O R D E R

        BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Honestech, Inc.'s ("Honestech") Motion for a New Trial [#160], Defendant Sonic Solutions's (and specifically, the Roxio Divison of Sonic Solutions) ("Roxio") response thereto [#165], and Honestech's reply [#168]; the Bill of Costs filed by Roxio [#153] and Honestech's objection thereto [#159]; and Honestech's Sealed Submission of Expenses and Legal Fees Related to Discovery of Roxio's Generic Defense [#157] and Roxio's response thereto [#161]. Having considered the aforementioned documents, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

## Background

        This is a trademark infringement action, which was tried to a jury from April 19, 2010 through April 23, 2010.  Honestech's central claim at trial was that it is the owner of a valid and protectible trademark in the phrase "VHS TO DVD" (the "VHS TO DVD Mark") which it used, from September 2005 onward, to market its analog to digital ("A/D") conversion product.  Honestech alleged Roxio willfully infringed Honestech's rights in the VHS TO DVD Mark by using a

confusingly similar title ("Easy VHS TO DVD") for its own A/D conversion product.  Honestech sought money damages and an injunction against Roxio.  Roxio denied Honestech's allegations in full, contending the VHS TO DVD Mark was not a valid and protectible trademark, and denying it infringed the Mark.  Roxio claimed Honestech was not entitled to any damages whatsoever.

Both sides presented evidence, and on April 23, 2010, the jury rendered a verdict in favor of Roxio.  *See* Verdict [#151].  Specifically, the jury found by a preponderance of the evidence that (1) the VHS TO DVD Mark is "descriptive" and (2) it has not acquired "secondary meaning."  *Id.* at 1-2.  After making these findings, the jury correctly did not proceed to answer any further questions regarding infringement or damages.

Now pending before the Court are Honestech's motion for a new trial, to which Roxio has responded in opposition, and Roxio's bill of costs, to which Honestech objects in part.  The Court will consider each in turn.

## Analysis

### I.    Motion for New Trial[1]

Honestech moves for a new trial based on the Court's allegedly erroneous admission of the testimony of Dr. Bruce Isaacson, an expert witness called by the defense.  *See* Pl.'s Mot. [#160].  Honestech does not challenge Dr. Isaacson's qualifications as an expert in the field, or the relevancy

---

[1]"The court may, on motion, grant a new trial on all or some of the issues...after a jury trial, for any reason for which a new trial has heretofore been granted in an action of law in federal court."  FED. R. CIV. P. 59(a).  While Rule 59 does not limit the possible grounds for a new trial, generally a new trial will be granted where the trial court finds (1) the verdict is against the weight of the evidence, (2) the amount of damages awarded is excessive, or (3) the trial was unfair or marred by prejudicial error.  *Whitehead ex rel. Whitehead v. K Mart Corp.*, 173 F. Supp. 2d 553, 557 (S.D. Miss. 2000); *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991).  Whether to grant or deny a motion for new trial "is within the sound discretion of the trial court."  *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).  To be entitled to a new trial based on erroneously admitted or excluded evidence, the party seeking a new trial must show the trial court both erred in its decision and that the error adversely influenced the jury's verdict.  *Munn v. Algee*, 924 F.2d 568, 571-73 (5th Cir. 1991).

of his testimony.  However, Honestech does dispute the scientific reliability of a survey conducted by Dr. Isaacson (and his resulting opinions) on the issue of whether "VHS to DVD" has achieved "secondary meaning" in the marketplace.  Honestech claims the survey is unreliable and should have been excluded because Dr. Isaacson "did not identify and survey a proper universe of relevant consumers."  *Id.* at 4.

The problems with Honestech's motion are multiple.  First, Honestech previously challenged Dr. Isaacson's testimony in a motion filed on November 11, 2009.  Pl.'s Mot. Exclude [#42].  The Court denied the motion on December 17, 2009.  *See* Order [#54].  Both parties agree Honestech's current motion for a new trial is based on the ***exact*** same arguments and evidence presented in support of Honestech's prior motion to exclude Dr. Isaacson's testimony (as Dr. Isaacson's trial testimony apparently did not differ in any material way from his deposition testimony).  *See* Pl.'s Reply [#168] at 1; Def.'s Resp. [#168] at 1.  Based on this representation, the Court finds no cause to rehash the same arguments post-trial which it considered exhaustively prior to trial.  Since Honestech helpfully admits it raises no new arguments, evidence, or legal theories in its present motion, the Court finds the evidence in question was not improperly admitted, based on the reasoning of its order of December 17, 2009.  *See* Order [#54] (finding "the fact Dr. Isaacson screened...in order to limit the universe to those who might be potential consumers...does not in itself render the survey unreliable.  Any objections to his methodology in this matter go to weight of the survey evidence, not its admissibility.").[2]

---

[2]The Court also notes for the record Honestech's counsel did not ask to voir dire Dr. Isaacson at trial before he offered his opinions, nor did counsel renew his objection to the introduction of Dr. Isaacson's testimony regarding the survey or the exhibits containing the results of the survey (Def. Exs. 144(b) and (d)), about which he now complains so strenuously.  *See* Apr. 21, 2010 Trial Transcript ("Tr.").  Instead, he allowed Dr. Isaacson to testify at length on the evidence, without objection.

Furthermore, even if admission of the survey evidence was erroneous, the Court finds Honestech was not prejudiced at trial by its inclusion.  Although Honestech claims the "error" of admitting Dr. Isaacson's testimony and exhibits was not harmless because Honestech had otherwise met its burden of proving "VHS to DVD" has achieved "secondary meaning" at trial, the Court does not agree.

The jury found the VHS TO DVD Mark is "descriptive."  Verdict [#151].  A descriptive mark is protectable only when it has acquired a "secondary meaning" in the minds of the consuming public.  *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 540 (5th Cir. 1998).  To establish secondary meaning, "a plaintiff must show that the primary significance of the term in the mind of the consuming public is not the product but the producer."  *Sec. Cen., Ltd. v. First Nat. Sec. Cents.*, 750 F.2d 1295, 1301 (5th Cir. 1985); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir.1983).  "The inquiry is one of the public's mental association between the mark and the alleged mark holder."  *Amazing Spaces, Inc. v. Metro Mini Storage*, 2010 WL 2181454 at *15 (5th Cir. 2010) (citations omitted).  "Because the primary element of secondary meaning is a mental association in buyer[s'] minds between the alleged mark and a single source of the product, the determination whether a mark or dress has acquired secondary meaning is primarily an empirical inquiry."  *Id.*  Plaintiffs must "demonstrate a high degree of proof to establish secondary meaning." *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999).

When it comes to proving secondary meaning, the Fifth Circuit has "consistently expressed a preference for an objective survey of the public's perception of the mark at issue."  *Id.*; *Zatarains*, 698 F.2d at 795 ("the authorities are in agreement that survey evidence is the most direct and persuasive way of establishing secondary meaning.").  This is true because the chief inquiry in

determining secondary meaning is "the attitude of the consumer toward the mark," and whether it "denote[s] to him a 'single thing coming from a single source[.]" *Aloe Creme Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970) (internal quotations omitted). "Short of a survey, this is difficult of direct proof." *Id.*

Honestech claims the admission of Dr. Isaacson's survey evidence in this case was prejudicial because "[w]ithout evidence of a survey, [Roxio] had nothing to rebut the substantial secondary meaning evidence" offered by Honestech. Pl.'s Mot. New Trial at 2. This assertion is incorrect for multiple reasons. First, Honestech ignores the fact Roxio was not required to rebut the secondary meaning evidence presented by Honestech at all, as the burden of proof for establishing secondary meaning "rests at all times with the plaintiff." *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir. 1979). As stated above, the burden on the plaintiff is a heavy one, as "[a] high degree of proof is necessary to establish secondary meaning for a descriptive term." *Id.*

Secondly, and even more importantly, Honestech's evidence on the issue of secondary meaning, despite its protestations, was not "substantial." Honestech did not offer its own survey evidence at trial, or even the testimony of a competing survey expert who could have pointed out the supposed deficiencies in Dr. Isaacson's survey. Of course, survey evidence is not a requirement for proving secondary meaning; it can otherwise be proven by evidence of the (1) length and manner of use of the mark, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) direct consumer testimony, and (7) the defendant's intent in copying the mark. *Dallas Cowboys Football Club, Ltd. v. America's Team Props., Inc.*, 616 F. Supp. 2d 622, 636 (N.D. Tex. 2009). Honestech's evidence of the foregoing factors was not overwhelming by any means.

-5-

In summary form, Honestech offered the following evidence in an attempt to establish secondary meaning.  With respect to the first factor, it offered evidence it had used the VHS TO DVD mark for over three years prior to Roxio's first use of it, and the mark had adorned over 170,000 units sold.  Pl.'s Mot. at 9.  With respect to the second factor, Mr. Choi testified Honestech sold over 170,000 units and generated over $7.7 million in revenue from the introduction of it's A/D conversion product in 2006 until December 2008 (when Roxio introduced its Easy VHS TO DVD product).  Honestech introduced evidence (in the form of Mr. Choi's testimony) it spent over $2.3 million on marketing its A/D conversion product, and that its A/D product was featured in numerous national publications.  Honestech introduced evidence of numerous articles written by third parties, and evidence its own product had received awards at two trade shows prior to Roxio's product being released.  It also introduced evidence which it characterized at trial as evidence of "copying"; for instance, evidence of a May 2008 email from Mr. Yavercovski (Roxio's Product Manager for PC products) in which he stated "That's it.  I've had it.  We're going to get these guys," referring to Honestech.  P's Ex. 219.  Honestech also introduced evidence one of Roxio's managers stated (during the preliminary stages of designing Roxio's own A/D product), "I think we need to get close to [Honestech]'s packaging," P.'s Ex. 225, and evidence Roxio's executives considered the name of Honestech's product (along with the names of all other comparable A/D conversion products) before choosing the name for their own product.  P.'s Ex. 229.  Finally, Honestech introduced evidence of two instances of alleged "actual confusion": (1) evidence the Wal Mart web page for Roxio's A/D product had, at one time, mistakenly indicated the product was made by Honestech, and (2) evidence the Newegg.com web page for Roxio's product had at one time, mistakenly shown Honestech's logo and label.

Although Honestech believes the foregoing is "substantial" circumstantial evidence of secondary meaning, the Court disagrees.  For instance, the length of use and volume of sales—170,000 units in three years—is hardly decisive evidence.  Without evidence of how the sales impacted secondary meaning, it cannot serve as a basis for showing secondary meaning.  *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, 2003 WL 23175436 at *4 (N.D. Tex. 2003) (finding an "unadorned statement [about the volume of sales], absent supporting evidence demonstrating how [plaintiff]'s annual sales impart secondary meaning to the mark..., cannot serve as a basis for secondary meaning.").  The evidence of the amount and manner of advertising was likewise incomplete: although Mr. Choi testified summarily to the amount his company spent on advertising, Honestech did not introduce any evidence indicating the advertising had any effect.  The Fifth Circuit has long recognized "the question is not the extent of promotional efforts, but their ***effectiveness*** in altering the meaning of the term to the consuming public."  *Amazing Spaces*, 2010 WL 2181454 at *15 (emphasis in original); *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 788 (5th Cir. 1984) ("[I]it is not the amount of money spent on advertising that is important, but the results achieved with the money spent.").  The jury may well have declined to assume—based solely on the amount of money Honestech had spent—that the advertising in this case was effective in altering the meaning of the phrase "VHS TO DVD" in the minds of the consuming public.

Likewise, with respect to the nature of the use of the mark in newspapers and magazines, there was some evidence of this, but it was necessarily confined to the mere three years Honestech's product was in existence before Roxio's, and therefore was hardly compelling.  Again, there was no evidence the promotional materials had any effect in altering the meaning of the VHS TO DVD mark to the consuming public.  As to Roxio's intent in copying the mark, the jury may well have

determined the various emails or presentations by Roxio's employees which referred to Honestech's product showed a normal level of competitiveness by employees of a company that was in direct competition with Honestech for the A/D conversion software market.

Finally, the evidence of "actual consumer confusion" offered by Honestech was meager. The jury may well have found the evidence of "actual confusion" was actually just evidence of a few inadvertent typographical errors. Stanley Truong, the associate buyer from Wal-Mart who mistakenly posted Roxio's product under Honestech's name, testified there are hundreds of PC software items sold through WalMart.com, and anywhere from ten to a hundred new pages can go up in one week. Glen Murray from NewEgg.com testified on cross-examination that he had no idea how long the Roxio's product was posted under Honestech's name, but that it usually only takes from 15 minutes to 24 hours to fix an error once it is reported. He testified Newegg.com had received *no* communications from customers complaining they had received Roxio's product when they meant to purchase Honestech's. Thus, there was no solid evidence that any consumer—someone who intended to purchase Honestech's product personally—was ever actually confused. Furthermore, proof of two or three instances of "confusion" (if the NewEgg.com and Wal-Mart errors can be so classified) for a product with (in 2008) 100,000 units sold and annual revenue of $4.4 million is more accurately characterized as "statistically insignificant rather than evidence of secondary meaning." *See Half Price Books*, 2003 WL 23175436 at *5.

In short, the Court finds the evidence of secondary meaning presented at trial would likely not have been sufficient to establish secondary meaning even without Dr. Isaacson's survey evidence to rebut it. There was simply no convincing evidence offered which indicated the primary significance of VHS TO DVD in the minds of the consuming public is not the product, but the

producer. This conclusion is further buttressed by the fact that Honestech presented no evidence involving an objective survey of the public's perception of its name, although the Fifth Circuit places considerable weight on such evidence. This omission, coupled with the ultimately unpersuasive evidence discussed above, is fatal to Honestech's argument that but for the admission of Dr. Isaacson's survey Honestech would have been able to carry the "substantial" evidentiary burden necessary to establish secondary meaning. *Zatarains*, 698 F.2d at 794.

Based on the foregoing, it cannot be said "[t]his is the unusual case where a new trial is needed because a full and fair presentation of the claims was impeded at trial, and substantial prejudice resulted." *Nichols v. American Nat. Ins. Co.*, 154 F.3d 875, 890 (5th Cir. 1998) (granting a new trial where erroneous evidentiary rulings so altered the course of trial as to deny a party a fair and impartial presentation of her case). Because Honestech has failed to show the evidence in question was erroneously admitted or that Honestech suffered substantial prejudice by the admission, the motion for a new trial is hereby DENIED.

## II.    Objections to the Bill of Costs

On May 7, 2010, Roxio submitted its Bill of Costs. Bill of Costs [#153]. Honestech objects to some of the costs, claiming (1) costs for computerized legal research are not recoverable, (2) Roxio's claimed deposition transcript costs are unnecessary and unreasonable, (3) Roxio's claimed witness fees are excessive and unrecoverable, (4) Roxio's claimed exemplification and photocopying costs are improperly documented, excessive, and unnecessary, and (5) costs for private process servers are not recoverable. Pl.'s Objs. [#159] at 2-10.

A.    **Legal Standard**

According to Rule 54(d) of the Federal Rules of Civil Procedure, costs shall be allowed as of course to the prevailing party in a civil action.  A party does not have to prevail on all issues to be entitled to an award of costs.  *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978). However, not all expenses incurred by a party can be reimbursed.  *West Wind Africa Line v. Corpus Christi Marine Servs.*, 834 F.2d 1232, 1236 (5th Cir. 1988) (finding Federal Rule of Civil Procedure 54(d) allows trial courts to refuse to tax costs otherwise allowable, but "it does not give them the power to tax items not elsewhere enumerated.").  Pursuant to 28 U.S.C. § 1920, a judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.  Courts may decline to award costs permitted by § 1920, but they may not award costs which are not specifically listed in the statute.  *Compton v. Taylor*, 2006 WL 1789045 at *3 (S.D. Tex. 2006) (citing *Crawford Fitting Co. v. JT Gibbons, Inc.*, 482 U.S. 437, 442 (1987)). The party seeking recovery of its costs bears the burden of proving the amount and necessity of its costs.  *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

B.    **Computerized Research**

 In its "Other Costs" category, Roxio claims $3,170.75 for the cost of online legal research conducted by its attorneys throughout their defense of this case.  Honestech objects that costs for

computerized legal research are not recoverable under § 1920, and the Court agrees.  Although Roxio cites one case in this Circuit in which a district court has awarded online research expenses as costs under § 1920, the overwhelming weight of authority in this and other circuits rejects this view.[3]  Because the "Supreme Court has indicated that federal courts may only award those costs articulated in § 1920 absent explicit statutory or contractual authorization to the contrary," *Cook Children's Med. Cent. v. The New England PPO Plan*, 491 F.3d 266, 274 (5th Cir. 2007), and because the Court finds no explicit authorization in § 1920 to award online legal research as a cost, the Court finds Roxio's total costs should be reduced by $3,170.75.

## C.    Deposition Transcripts

The costs of taking, transcribing, and reproducing depositions which are "necessarily obtained for use in the case" are generally allowable under  28 U.S.C. § 1920(2).  *Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.*, 952 F.Supp. 415, 417 (N.D. Tex. 1997). In this case, Roxio includes $18,657.08 in deposition transcript costs.  *See* Bill of Costs [#153]. Honestech objects that Roxio (1) failed to show any deposition transcripts were necessary, (2) has claimed costs for ten depositions that were not used at trial, and (3) has included costs for expedited transcripts.

---

[3]*See, e.g. Javelin Invs., LLC v. McGinnis*, 2007 WL 1003856 at *4 (S.D.Tex. 2007) (noting that charges for Westlaw and Lexis computer-aided research "arguably are recoverable as attorney's fees" but "are clearly not taxable costs under § 1920"); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429 (7th Cir. 1994) (holding computer research expenses are to be considered "attorneys fees," not taxable "costs," because the added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching);  *Leftwich v. Harris-Stowe State College*, 702 F.2d 686 (8th Cir. 1983) (finding computer-aided research is a component of attorney's fees and cannot be independently taxed as an item of cost); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (finding the charges associated with computer-assisted legal research are not separately recoverable expenses); *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006) (same); *Sorbo v. United Parcel Service*, 432 F.3d 1169 (10th Cir. 2005) (same); *Sigur v. Emerson Process Manag.*, 2008 WL 1908590 at *9 (M.D. La. 2008) (following the "majority approach" in finding defendants are not entitled to computer legal research costs, "as such expenses are considered compensable under an application for attorney's fees and therefore are not separately taxable as costs.").

Costs related to the taking of depositions are allowed under § 1920(2) and (4) "if the materials were necessarily obtained for use in the case." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999). "[A] deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case.' " *Fogleman v. Aramco*, 920 F.2d 278, 285 (5th Cir. 1991). A deposition is necessarily obtained for use in the case "[i]f, at the time the deposition was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery." *Id.* Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court. *Fogleman*, 920 F.2d at 285-86.

The receipts attached to the Bill of Costs in Roxio's supporting documentation indicates the transcripts obtained were for the depositions of Jay Choi (2), Robert A. Peterson, Ph.D, Linda Golden, Ph.D, Bradley Flack, Michael Romanies, Chris Loeper (2), Michelle Rado, Stanley Truong, Steven Gibson (2), Ryan Wong, Sunny Cho, Amelia Schlammp, and Glenn Murray. *See* Wahlstrad Decl. [#154] at Ex. C. The only evidence indicating the claimed transcripts were necessary is Ms. Wahlstrand's statement in her declaration that "[t]hese recorded  transcripts were necessarily obtained for use in the case." Wahlstrand Decl. at ¶ 4.

Ms. Wahlstrand's conclusory assertion is bare support for the deposition costs claimed; however, the Court finds at least some of the deposition transcripts appear to have been "necessarily obtained for use in the case" because they were undisputedly either used at trial (in the case of the transcripts for the depositions of Jay Choi (2), Brad Flack, and Ryan Wong) or were transcripts of depositions of witnesses designated by Honestech, whom ***Honestech*** chose not to call at trial (in the case of Linda Golden, Robert Peterson, Michael Romanies, and Sonny Cho). However, with respect

to the rest of the deposition transcripts—for Chris Loeper (2), Michelle Rado, Stanley Truong, Steven Gibson (2), Amelia Schlammp, and Glenn Murray—the Court has no idea whether or to what extent the transcripts were necessarily obtained for use in the case.  Without any information aside from Ms. Wahlstrand's conclusory statement, the Court must disallow these costs. By the Court's calculations, the transcripts for the depositions of Chris Loeper (2), Michelle Rado, Stanley Truong, Steven Gibson (2), Amelia Schlammp, and Glenn Murray cost a total of $7,260.75.[4]  These costs shall be disallowed.

Honestech also claims Roxio should not be allowed to recover costs for expedited transcripts. The Court agrees.  Roxio has provided detailed invoices which show the costs of expediting the transcripts were $383.94 for Choi's depositions, $672.40 for Dr. Golden's, and $468.16 for Dr. Peterson's.  Holtzapple Decl. [#164].  These costs, which total $1,524.50, shall also be disallowed. In sum, a total of $8,785.25 is disallowed from Roxio's deposition costs.

### D.    Witness Fees

Honestech also objects to $927.06 in witness fees requested by Roxio as recovery of the costs incurred by Chris Loeper, Roxio's corporate representative.  Honestech contends Loeper is not entitled to any expenses incurred as Roxio's corporate representative because he was in the same position as a party to the lawsuit (and § 1920 undisputedly does not provide for the reimbursement of a party's travel and lodging expenses).  However, where a corporate representative is not a controlling officer of the company, many courts have determined the representative is entitled to the

---

[4]Specifically, Roxio's documentation shows the transcript for Chris Loeper's deposition cost $1,672.14, the transcript for Michelle Rado's deposition cost $878.06, the transcript for Stanley Truong's deposition cost $444.15, the transcript for Steven Gibson's deposition cost $444.28, the transcript for Amelia Schlammp's deposition cost $2,376.44, the transcript for Glen Murray's deposition cost $750.15, and the transcripts for Steve Gibson and Chris Loeper's 2nd depositions cost $695.53.  Wahlstrad Decl. [#154] at Ex. C.

statutory attendance fee and subsistence allowance provided for witnesses under 28 U.S.C. § 1821, although only for the day or days he appeared as a witness.  *See Ezelle v. Bauer Corp.*, 154 F.R.D. 149, 154 (S.D. Miss. 1994) (citing cases).   This does not include the cost of the corporate representative's flight, as airfare expense is a cost incurred in the person's capacity as corporate representative.  *Id.*  The Court finds this distinction is reasonable, and therefore allows the cost of a $40 subsistence fee for Mr. Loeper's one day of testimony, and one night of Mr. Loeper's hotel stay.[5]  As best the Court can determine from the receipts filed with the Bill of Costs, Mr. Loeper's hotel cost $189.00 per night.  *See* Wahlstrad Decl. at Ex. D.  Therefore, the costs recoverable for Mr. Loeper shall be reduced by $698.06.

Honestech also objects that the witness fees claimed for Dr. Isaacson's hotel and airfare are "excessive."  Dr. Isaacson's claimed costs are $775.10 for airfare from Los Angeles, and $371.44 for a night at the Driskell hotel.   Honestech sets forth no evidence Dr. Isaacson's airfare rates were uneconomical, and without any relevant comparison point—such as evidence of other flights from the same location on the same day—the Court is without sufficient knowledge to determine whether the airfare cost is excessive.  *See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 574 (5th Cir. 2005).  However, the Court does have sufficient information to determine the overnight rate at the Driskill is excessive.  Section 1821 provides that, when an overnight stay is necessary, reimbursement is to be in accordance with the guidelines for official travel by federal employees prescribed in 5 U.S.C.A. § 5702(a).  *See* 28 U.S.C. § 1821.  The subsistence rate in Austin, Texas for 2010 on the relevant dates was $115.00 for an overnight stay.  *See*

---

[5]28 U.S.C. § 1821 provides that witnesses are to be paid no more than a $40.00 attendance fee for each day they attend trial proceedings.  *See* 28 U.S.C. § 1821.

http://www.gsa.gov/perdiem.  Because Honestech specifically objects to Dr. Isaacson's hotel cost as excessive, the Court finds any amount over $115.00 should be disallowed.  Mr. Isaacson's claimed costs are therefore reduced by $256.44.

### F.   Exemplification and Photocopying Costs

Section 1920(4) permits an award of costs for "exemplification and copies of papers necessarily obtained for use in the case."  But a necessary condition for recovery of costs under § 1920(4) is that such items were "necessarily obtained" for use in the trial.  *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).  Thus, the Court must make an express finding of fact the expenses were actually necessary.  *Id.*, *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 892 (5th Cir. 1993).

In its Bill of Costs, Roxio provides a line item list of its photocopy expenses; however, it does not provide any specific proof of the necessity for these expenses.  Wahlstrand Decl. at Ex. E.  In Ms. Wahlstrad's affidavit, she simply makes the blanket statement that 10% of the black-and-white copies and 40% of the color copies were necessarily obtained for use in the case.  Wahlstrand Decl. at ¶ 6.  Without more information, it is impossible for the Court to determine whether the printing costs claimed were actually necessary to the prosecution of this case; Ms. Wahlstrand's statement is too conclusory to be of assistance.  *See Auto Wax Co.*, 2002 WL 265091 (disallowing certain costs because the prevailing party only made a blanket statement regarding necessity).  Although prevailing parties do not have to justify every single photocopying cost, they do have to provide enough information for the Court is able to make a reasonable determination of necessity.  Because the Court cannot make a reasonable determination in this instance, these costs shall be disallowed.

Furthermore, as Honestech correctly notes, the costs incurred in connection with the Exhibit Company's services are not recoverable.  The Fifth Circuit has held that "absent pretrial approval of the exhibits...a party may not later request taxation of the production costs to its opponent."  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995).  Because there was no pre-trial authorization for Roxio to claim its expenses for producing trial exhibits, those costs must be denied.  Accordingly, Roxio's claimed costs are reduced by a total of $6,750.33, the entire cost claimed for exemplification and photocopying.

### E.    Private Process Servers

Finally, Honestech objects to the $374.84 Roxio paid to private process servers, as the recovery of costs for private process servers is not provided for in § 1920.  Def.'s Objs. at 2-3 (citing *Auto Wax Co., Inc. v. Mark V Products, Inc.*, 2002 WL 265091 at *1 (N.D. Tex. 2002)).  The objection is valid.  Because private process server fees are not specifically enumerated in § 1920, which encompasses only fees paid to the United States Marshal for service of process, and because there was nothing exceptional about the parties or the nature of this case, the Court finds the private process server fees are not properly taxable as costs.  *See, e.g. Cypress-Fairbanks Ind. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997) (finding "[the defendant] properly objected to the...cost attributable to the school district's use of a private process server to serve both them and their attorney despite their counsel's having agreed to accept service on their behalf and not having objected to the use of service by mail.  As there was nothing exceptional about the parties or the nature of this case, the district court should have denied these unnecessary private service costs.").  Honestech's objection on this point is sustained, and Roxio's costs are therefore reduced by $374.84.

In light of the foregoing, the Court in its discretion reduces Roxio's costs by a total of $20,035.67, and hereby awards Roxio total reasonable and necessary costs in the amount of $12,246.33 (TWELVE THOUSAND TWO HUNDRED AND FORTY-SIX DOLLARS AND THIRTY-THREE CENTS).

### III.    Honestech's Expenses and Legal Fees Related to Roxio's Generic Defense

On May 14, 2010 Honestech filed its sealed submission of expenses and legal fees related to discovery of Roxio's generic defense, to which Roxio objects. *See* Sealed Doc. [#157]; Roxio's Resp. [#161].  Honestech's submission arises from the fact that on February 1, 2010, the morning of the initial jury selection in this case, Roxio made clear it intended to argue the VHS TO DVD Mark was generic.  Honestech objected to the theory being introduced at trial, as Roxio had neither pled nor specified in its answers to interrogatories (or in any supplemental answers) that it intended to raise the issue.  The Court found Honestech's objection accurate: Roxio's amended answer did not raise any defense about the genericness of Plaintiff's trademark, or allege in any way that the trademark was generic.  *See* Am. Compl. [#25].  Likewise, Honestech read into the record Interrogatory No. Seven, which had been served on Roxio (and which Honestech later requested Roxio supplement).  The interrogatory requested that Roxio state in full its contentions and defenses, but Roxio undisputedly did not state anywhere in its response (or in supplements to its response) that it intended to rely on a defense of genericness or contend that the trademark was generic.

Although Roxio argued at the time, and still argues, that genericness is not an affirmative defense which has to be specifically pled, Roxio's own actions indicate Honestech could have expected the issue to be  pled, as Roxio explicitly raised "descriptiveness" as an affirmative defense in its Amended Answer.  *See* Am. Answer [#25] at 8 (listing as the "Eighth Affirmative Defense"

the following: "Plaintiff's trademark is merely *descriptive* of Plaintiff's goods and has not become distinctive of Plaintiff's goods in interstate commerce[.]") (emphasis added).  However, Roxio never specifically alleged the VHS TO DVD Mark was *generic* until after discovery had been completed, in its motion for summary judgment.[6]

On the morning of jury selection, Honestech's counsel stated in the record his client would be prejudiced to proceed to trial without discovery and preparation if the generic defense were to be tried.  The Court could not help but agree it would be prejudicial to proceed to trial on an issue about which there had been no discovery and of which there was no direct notice until the morning of jury selection.  Roxio's counsel, for his part, admitted the genericness issue was an important part of the defense, and that he was not willing to forgo arguing genericness.

Based on this impasse, the Court had no choice but to continue the trial of the case rather than proceed to trial and order there would be no generic defense, or actually try the issue without preparation for one side.  *See* Feb. 1, 2010 Order.  In its order granting continuance of the trial, the Court ordered a 90-day extended discovery period, and ordered that Honestech submit its fees and expenses related to the extended discovery period.  *Id.*  The Court found the predicament was the direct result of Roxio's failure to give appropriate notice of its intent to raise the issue of genericness in its answer and interrogatory answers, and therefore ordered that Honestech should, at the close of the extended discovery period, submit its expenses and legal fees relating to discovery of the

---

[6]Although Roxio argues in its current response to Honestech's submission of fees and expenses that it *did* in fact raise the issue of genericness in several pleadings filed before the discovery deadline, it is referring to one sentence in a footnote in its opposition to Honestech's Motion to Strike the testimony of Dr. Isaacson.  *See* Roxio's Resp. at 2. One sentence in a footnote in Roxio's response to a motion to strike is not sufficient notice that Roxio intended to raise genericness, given the fact Roxio did not include any reference to genericness in its Amended Answer or in its answer to interrogatories.  Furthermore, Roxio did not identify this one sentence on February 1, 2010, when the Court was faced with the decision of whether to continue the case.  Therefore, the Court was not aware of this information at a time when it actually could have been helpful in avoiding the continuance of the trial and the incurrence of additional fees and expenses in discovery.

genericness defense.  *Id.*  The result of Roxio's lack of clarity in its answer and interrogatory responses was that the Court's time was wasted, even though the two-and-a-half week trial had been set by order of the Court since April of 2009, and substantial taxpayer funds were wasted, as additional jurors had been called for this case because, due to counsels' scheduling conflicts, the case had to be set over a three-week period.  *Id.*

On May 14, 2010, Honestech complied with the Court's order of February 1, 2010 and submitted its expenses and legal fees relating to the extended discovery period.  Sealed Doc. [#157].  In its submission, Honestech represents its attorneys spent a total of 82.5 hours in extended discovery on the genericness defense, and thereby incurred total attorneys' fees of $43,318.50.  Honestech also represents it incurred out-of-pocket expenses of $3,312.75 due to the additional discovery.  Honestech's lead counsel, Mr. Benson, submits a declaration setting forth in reasonable detail the hours billed by the attorneys during the extended discovery period, and his opinion that the hours worked and costs incurred were reasonable and necessary.

Roxio objects to the submission on multiple grounds.  Principally, it claims it was not required to plead genericness as a defense.  The Court agrees that case law is unclear on this issue, especially where a mark is unregistered.  But simply taking Roxio's own pleadings in this case as a guide, the Court finds Roxio was required to give some clear notice it intended to argue genericness.  Roxio's pleadings and answers on the issue of genericness were inordinately confusing and misleading, as Roxio specifically pled the very similar issue of descriptiveness as an affirmative defense, but failed to plead genericness as a affirmative defense.  Furthermore, Roxio failed to state in its response to Interrogatory No. Seven—which specifically asked Roxio to state in full ***both*** its contentions and defenses—that it would raise the issue of genericness either as a contention or as

a defense.  On this basis, Honestech was reasonably entitled to assume genericness would not be part of the defense's case.

Roxio's second point is that Honestech's requested costs and attorneys' fees are excessive. This point is well taken.  Honestech states (and Roxio does not dispute) that the only additional discovery conducted by Honestech in the period following the February 1, 2010 mistrial were two short depositions of Mr. Gibson and Mr. Loeper, which lasted a total of three hours on March 16, 2010.  Roxio's Resp. at 8.  Roxio claims all the other attorneys' fees would have been incurred by Honestech even if it had originally pled the genericness defense, and the Court agrees.  The only additional hours incurred by Honestech's attorneys due to Roxio's late notice of its intent to argue genericness were the hours Mr. Benson spent in additional depositions that had to be called so that witnesses could be re-questioned on genericness issues about which they had not been questioned in their previous deposition(s).  Other than this, the wildly excessive amount of hours claimed for such things as  "conferring" about the genericness defense, re-reviewing the Amended Answer and interrogatories, reviewing the Court's February 1st order, reviewing genericness cases, writing memorandums on the generic defense, reviewing and analyzing exhibits relating to the genericness defense, etc. were all hours which would have been expended regardless of when Roxio had notified Honestech it intended to argue genericness.  The only way in which Honestech was prejudiced by the late notice was in having to recall already-deposed witnesses for separate depositions on the genericness issue, and thus the Court will compensate only for the time spent in, and reasonably spent preparing for, those depositions.

The depositions of Gibson and Loeper undisputedly lasted a total of three hours.  Although Mr. Benson claims he spent ten hours preparing for the three-hour depositions, this amount is clearly

-20-

excessive.  The Court will compensate Mr. Benson for six hours of reasonable and necessary preparation time, as well as the three hours he actually spent in the depositions.  At a reasonable rate of $300 per hour, the total reasonable and necessary attorneys' fees expended as a result of Roxio's late notice is $2,700.00.[7]

Roxio does not specifically object to the costs claimed by Honestech, and all of the costs relate solely to Mr. Benson's trip to San Francisco to depose Gibson and Loeper.  He seeks reimbursement for his own airfare to and from Austin, his dinner for two nights, his cab fare to and from the airport, his hotel stay for one night, and for the court reporting and videographer services used for the depositions.  The total expenses claimed are $3,312.75.  The Court finds these costs appear to have been reasonable and necessary expenses incurred in re-deposing the two witnesses.

Therefore, in accordance with the foregoing, the Court finds Honestech is entitled to its reasonable and necessary fees and expenses in connection with the excess discovery that was required as a result of Roxio's late notice of its intent to argue genericness at trial, and hereby awards Honestech total reasonable and necessary attorneys' fees in the amount of $2,700.00 (TWO THOUSAND SEVEN HUNDRED DOLLARS AND NO CENTS) and costs in the amount of $3,312.75 (THREE THOUSAND THREE HUNDRED AND TWELVE DOLLARS AND SEVENTY-FIVE CENTS).

### Conclusion

Accordingly, the Court enters the following orders:

---

[7]The Texas State Bar, in a 2006 report (the most current available), reported the average hourly rate for attorneys with 11 to 15 years of experience is $233 per hour, and for attorneys with 16 to 20 years of experience is $244 per hour.  *See* STATE BAR OF TEXAS, *Hourly Rates in 2005 Report* (Sept. 21, 2006) at 4.  The Court adjusts the hourly rate upward in this case only because of Mr. Benson's long experience in the complicated field of IP litigation.

IT IS ORDERED that Roxio's Bill of Costs [#153] is PERMITTED IN PART and DENIED IN PART as discussed above;

IT IS FURTHER ORDERED that the Clerk SHALL assess costs of suit against Honestech in accordance with this order, in the total amount of $12,246.33 (TWELVE THOUSAND TWO HUNDRED AND FORTY-SIX DOLLARS AND THIRTY-THREE CENTS).

IT IS FURTHER ORDERED that Honestech's Motion for a New Trial [#160] is DENIED in full.

IT IS FINALLY ORDERED that the Clerk SHALL assess attorneys' fees and costs of suit against Roxio in accordance with this order, in the total amount of $2,700.00 (TWO THOUSAND SEVEN HUNDRED DOLLARS AND NO CENTS) in attorneys' fees and $3,312.75 (THREE THOUSAND THREE HUNDRED AND TWELVE DOLLARS AND SEVENTY-FIVE CENTS) in costs.

SIGNED this the 7th day of July 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE